**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FAIR SHAKE ENVIRONMENTAL LEGAL SERVICES, <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>FAIRSHAKE, INC., <br><br>　　　　Defendant. | Civil Action <br><br> No. _____21-362_____ <br><br><br> *Electronically Filed* <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Fair Shake Environmental Legal Services ("Plaintiff Fair Shake"), by and through its undersigned counsel, hereby asserts a Complaint against Defendant FairShake, Inc. ("Defendant FairShake"), seeking injunctive and other relief, and in support thereof states as follows:

### NATURE OF THE ACTION

1. This is a civil action for injunctive relief and other relief including monetary damages and attorney fees against Defendant FairShake for its acts of service mark infringement, and false designation of origin under the federal laws of the United States of America, as well as for service mark infringement and unfair competition under the common law of the Commonwealth of Pennsylvania.

### PARTIES, JURISDICTION AND VENUE

2. Plaintiff Fair Shake is a Pennsylvania non-profit corporation with a principal place of business at 5614 Elgin Street, Pittsburgh, PA 15206.

3. Upon information and belief, Defendant FairShake is a Delaware corporation with a principal place of business at 1611 Telegraph Ave., Fourth Floor, Oakland, CA 94612.

4. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has jurisdiction over Plaintiff Fair Shake's common law claim pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Defendant FairShake because a significant portion of the acts giving rise to this Complaint occurred within this Judicial District, and because Defendant FairShake's actions directed toward Pennsylvania establish sufficient contacts to subject Defendant FairShake to Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann. § 5322.

6. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Plaintiff Fair Shake's claims occurred in this Judicial District, and because Defendant FairShake is a resident of this Judicial District under the meaning of 28 U.S.C. § 1391(c)(2).

**STATEMENT OF FACTS**

7. Plaintiff Fair Shake is a non-profit, public-interest law firm providing educational, counseling, and legal services to individuals and organizational clients in the area of environmental law.

8. As an additional part of its mission, Plaintiff Fair Shake further provides business training to young attorneys in the field of legal services, and maintains a blog regarding relevant issues in the law on its website, https://www.fairshake-els.org/ (last visited March 15, 2021).

9. Plaintiff Fair Shake advertises its legal and educational services via its website.

10. Plaintiff Fair Shake provides its services to individuals of decreased economic means either *pro bono*, or on a reduced sliding scale. Plaintiff Fair Shake is dedicated to promoting the fair treatment and meaningful involvement of all people, regardless of race, color, national

origin, or income, in the development, implementation, and enforcement of environmental laws, regulations, and policies.

11. Plaintiff Fair Shake was incorporated on May 1, 2013. Plaintiff has been providing its legal and educational services under the mark FAIR SHAKE since at least February of 2014.

12. On March 4, 2015, Plaintiff Fair Shake applied to register the FAIR SHAKE and FAIR SHAKE and Design service marks (the "FAIR SHAKE marks") with the U.S. Patent and Trademark Office, based on a date of first use and first use in US interstate commerce of April 28, 2014.

13. Plaintiff Fair Shake is the owner of the resulting U.S. Service Mark Registration No. 4,831,282 for FAIRSHAKE in standard characters in International Class 041 for "educational services, namely, conducting seminars, workshops and conferences in the field of legal services; business training in the field of legal services; on-line journals, namely, blogs featuring legal services", and International Class 045 for "legal services".  A copy of the original registration certificate for the '282 registration for FAIR SHAKE is included as Exhibit A hereto.

14. Plaintiff Fair Shake also is the owner of resulting U.S. Service Mark Registration No. 4,831,288 for FAIR SHAKE and Design, as depicted below.



The '288 registration is in International Class 041 for "educational services, namely, conducting seminars, workshops and conferences in the field of legal services; business training in the field of legal services; on-line journals, namely, blogs featuring legal services", and International Class

045 for "legal services".  A copy of the original registration certificate for the '288 registration for FAIR SHAKE and Design is included as Exhibit B hereto.

15. Both the '282 and the '288 registrations have achieved incontestable status with the U.S. Patent and Trademark Office.

16. Using the FAIR SHAKE marks, Plaintiff Fair Shake has provided legal services and educational services to clients and individuals based in multiple states, including Pennsylvania, Ohio, and California.

17. Since at least February of 2014, Plaintiff Fair Shake has provided and continues to provide legal services and educational services in interstate commerce under the FAIR SHAKE marks.

18. Plaintiff Fair Shake has expended significant resources marketing its services using the FAIR SHAKE marks, and has developed significant goodwill among the consuming public as a result.

19. Plaintiff Fair Shake's clients, its competitors, and the general public have come to associate the high-quality legal services and educational services provided by Plaintiff Fair Shake with the FAIR SHAKE marks.  The FAIR SHAKE marks have become very valuable business assets of Plaintiff Fair Shake.

20. Records from the U.S. Patent and Trademark Office ("USPTO") indicate that Defendant FairShake became "FairShake, Inc." when it changed its name from "Radvocate, Inc." on February 3, 2020.

21. Upon information and belief, Defendant FairShake first began using the confusingly-similar FAIRSHAKE mark on or about January 31, 2018.  *See*

4

https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx (last visited March 16, 2021) and Ex. C.

22. Upon information and belief, Defendant FairShake offers and provides services related to resolving consumer legal disputes under the confusingly-similar mark FAIRSHAKE.

23. Upon information and belief, Defendant FairShake advertises its services on, *inter alia*, its interactive website, https://fairshake.com/, using the confusingly-similar FAIRSHAKE mark.

24. Defendant FairShake's website includes a portal through which clients and potential clients are able to "Start a Claim" by entering information regarding their legal disputes via an interactive menu. *See* https://fairshake.com/start/?menu (last visited March 17, 2021).

25. Upon information and belief, Defendant FairShake has represented clients located in Pennsylvania using the confusingly-similar FAIRSHAKE mark.

26. Upon information and belief, Defendant FairShake explicitly directs its activities under the confusingly-similar FAIRSHAKE mark toward Pennsylvania.

27. By way of example, Defendant FairShake directs its clients to file complaints and demands for arbitration against Comcast on Defendant FairShake's website under the confusingly-similar FAIRSHAKE mark.  https://fairshake.com/comcast/file-arbitration/ (last visited March 17, 2021).

28. On its website, Defendant FairShake provides a link to a fillable demand for arbitration, and instructs its clients and potential clients to serve Comcast at an address in Philadelphia, Pennsylvania. *Id.* (last visited March 17, 2021).

29. Via its website, Defendant FairShake offers to "help [its clients] through the legal steps" of their legal disputes using the confusing-similar mark FAIRSHAKE. *See* https://fairshake.com/ (last visited March 17, 2021).

30. Upon information and belief, Defendant FairShake provides attorneys to represent at least some of its clients in their consumer disputes.

31. Upon information and belief, the CEO of Defendant FairShake is an attorney.

32. Upon information and belief, Defendant FairShake provides advertisements, news articles, commentary, and blog posts regarding the law of commercial disputes using the confusingly-similar FAIRSHAKE mark on its Twitter account @fairshake.

33. On November 22, 2019, as "Radvocate, Inc.," Defendant FairShake filed U.S. Trademark Application Serial No. 88/703,390 for FAIRSHAKE with the USPTO.

34. In the '390 application, Defendant FairShake claimed the following services:

> "**Lawyer referrals**" in Class 035;
>
> "Providing temporary use of a non-downloadable web application for submitting, **managing and resolving consumer disputes**" in Class 042; and
>
> "**Alternative dispute resolution services; Legal document preparation services; Legal document preparation and research services for attorneys; Mediation**" in Class 045.

(Emphasis added).

35. On February 27, 2020, the USPTO issued a non-final office action rejecting Defendant FairShake's '390 application due to a likelihood of confusion with Plaintiff Fair Shake's FAIR SHAKE marks. *See* Ex. D.

36. Plaintiff Fair Shake first became aware of Defendant FairShake's use of the confusingly-similar FAIRSHAKE mark in the spring of 2020.

6

37. On June 1, 2020, Plaintiff Fair Shake sent Defendant FairShake a letter demanding that Defendant FairShake cease infringing Plaintiff Fair Shake's FAIR SHAKE marks. *See* Ex. E.

38. In the letter of June 1, 2020, Plaintiff Fair Shake referenced the Office Action of February 27, 2020 in the '390 application. *See id.*

39. In the letter of June 1, 2020, Plaintiff Fair Shake explained that it had represented a client from California, the state where Defendant FairShake has its principal place of business, and cited to the case where Plaintiff Fair Shake did so. *See id.*

40. In the letter of June 1, 2020, Plaintiff Fair Shake explained to Defendant FairShake that Plaintiff Fair Shake had experienced instances of actual confusion involving Defendant FairShake. *See id.*

41. On August 26, 2020, Defendant FairShake responded to the non-final office action in the '390 application. *See* Ex. F.

42. In its argument to convince the USPTO to allow the '390 application for the confusingly-similar FAIRSHAKE mark, Defendant FairShake amended the identification of services to remove "lawyer referrals" and "Alternative dispute resolution services; Legal document preparation services; Legal document preparation and research services for attorneys; Mediation." See *id.* at 6.

43. Upon information and belief, in spite of this amendment, Defendant FairShake continues to refer or provide attorneys for at least some of its clients under the confusingly-similar FAIRSHAKE mark. It simply removed those items from its trademark registration application and did not cease actual use of the mark in relation to those services.

44. Upon information and belief, in spite of the amendment of August 26, 2020, Defendant FairShake continues to provide "Alternative dispute resolution services; Legal

document preparation services; Legal document preparation and research services for attorneys; [and/or] Mediation" under the confusingly-similar FAIRSHAKE mark.

45. In its argument to convince the USPTO to allow the '390 application for the confusingly-similar FAIRSHAKE mark, Defendant FairShake attempted to differentiate the confusingly-similar FAIRSHAKE mark from Plaintiff Fair Shake's FAIR SHAKE marks by stating "[i]n contrast, [Plaintiff Fair Shake's] services are directed to and used by low-income communities in Ohio, West Virginia, and Pennsylvania in response to their suffering from environmental issues like pollution or contaminated water." *See id.* at 9. Defendant FairShake made this argument despite having actual knowledge that Plaintiff Fair Shake's clients were not limited to that group. *See, e.g.*, Ex. E. at 1. Defendant FairShake further made this argument despite having actual knowledge of its own activities directed toward Pennsylvania under the confusing-similar FAIRSHAKE mark. https://fairshake.com/comcast/file-arbitration/ (last visited March 17, 2021).

46. In its argument to convince the USPTO to allow the '390 application for the confusingly-similar FAIRSHAKE mark, Defendant FairShake stated that "no confusion is likely" between Plaintiff Fair Shake's FAIR SHAKE marks and Defendant FairShake's confusingly-similar use of the FAIRSHAKE mark. *See* Ex. F at 9. Upon information and belief, Defendant FairShake made this statement after having actual knowledge of instances of actual confusion between Plaintiff Fair Shake's FAIR SHAKE marks and Defendant FairShake's confusingly-similar use of the FAIRSHAKE mark. *See* Ex. E. at 2.

47. Both Plaintiff Fair Shake and Defendant FairShake provide legal services and education services to the general public. Both Plaintiff Fair Shake and Defendant FairShake advertise their legal services and educational services via their respective websites. Upon

information and belief, Plaintiff Fair Shake and Defendant FairShake serve the same client base, and advertise and provide their services through the same channels of trade.

48. Plaintiff Fair Shake never has authorized Defendant FairShake to use any intellectual property owned by Plaintiff Fair Shake.

49. Since sending the June 1, 2020 letter, Plaintiff Fair Shake has experienced no fewer than seven additional separate instances where potential clients have confused Plaintiff Fair Shake with Defendant FairShake.

50. As of the date of the filing of this Complaint, Defendant FairShake has refused to cease any of its infringing use of the confusingly-similar FAIRSHAKE mark.

## COUNT I: SERVICE MARK INFRINGEMENT (15 U.S.C. § 1114)

51. Plaintiff Fair Shake incorporates each and every allegation of the preceding paragraphs by reference as if fully restated herein.

52. Plaintiff Fair Shake's uses of the FAIR SHAKE marks predate any alleged uses of FAIRSHAKE by Defendant FairShake.

53. Plaintiff Fair Shake's registrations of the FAIR SHAKE marks predate any alleged uses of FAIRSHAKE by Defendant FairShake.

54. Upon information and belief, Defendant FairShake knew or should have known of Plaintiff Fair Shake's FAIR SHAKE marks prior to the time that Defendant FairShake began using the confusingly similar FAIRSHAKE mark, and was actually aware of Plaintiff Fair Shake's registrations at least as early as February 27, 2020, but has continued to use FAIRSHAKE without any permission to do so.

55. Defendant FairShake's use of FAIRSHAKE is confusingly similar to Plaintiff Fair Shake's FAIR SHAKE marks, in violation of the Lanham Act.

56. Defendant FairShake's use of FAIRSHAKE is likely to deceive and cause confusion and mistake among clients, potential clients, and the public.

57. Defendant FairShake's use of FAIRSHAKE in connection with its legal services and educational services has caused multiple instances of actual confusion among clients, potential clients, and the general public.

58. Defendant FairShake has misappropriated and continues to misappropriate Plaintiff Fair Shake's substantial property rights in the FAIR SHAKE marks in relation to legal services and educational services, as well as the goodwill associated therewith. Unless restrained and enjoined by this Court, such conduct will continue and permit Defendant FairShake to improperly interfere with Plaintiff Fair Shake's continued promotion and expansion of its business interests.

59. Upon information and belief, Defendant FairShake's ongoing acts of infringement are willful, and have been at least since February 27, 2020.

60. As a direct and proximate result of Defendant FairShake's acts of infringement, Plaintiff Fair Shake has and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial, as well as irreparable harm. Plaintiff Fair Shake is entitled to all available and applicable remedies provided for, including, without limitation, those set forth in 15 U.S.C. §§ 1117 (including statutory damages under this section for willful conduct) and 1118, as well as injunctive relief, disgorgement of Defendant FairShake's profits, treble damages, costs and reasonable attorneys' fees.

### COUNT II: FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

61. Plaintiff Fair Shake incorporates each and every allegation of the preceding paragraphs by reference as if fully restated herein.

62. Defendant FairShake's unauthorized use of FAIRSHAKE in connection with its legal services and educational services is likely to deceive and cause confusion among clients, potential clients, and the general public as to the source of origin of the services offered by Defendant FairShake and the sponsorship or endorsement of those services by Plaintiff Fair Shake.

63. Defendant FairShake's unauthorized use of FAIRSHAKE in connection with its legal services and educational services has caused multiple instances of actual confusion among clients, potential clients, and the general public.

64. Defendant FairShake's unauthorized use of FAIRSHAKE in commerce is likely to cause initial interest confusion among the general public.

65. Plaintiff Fair Shake never has authorized, licensed or otherwise condoned or consented to Defendant FairShake's use of the FAIR SHAKE marks or any confusingly similar imitations or iterations thereof.

66. Defendant FairShake has misappropriated and continues to misappropriate Plaintiff Fair Shake's substantial property rights in the FAIR SHAKE marks, as well as the goodwill associated therewith. Unless restrained and enjoined by this Court, such conduct will continue and permit Defendant FairShake to gain an unfair competitive advantage and allow Defendant FairShake to improperly interfere with Plaintiff Fair Shake's continued promotion and expansion of its business interests.

67. Defendant FairShake has unfairly profited from its actions.

68. Upon information and belief, Defendant FairShake's ongoing acts of infringement are willful, and have been at least since February 27, 2020.

69. As a direct and proximate result of Defendant FairShake's acts of infringement, Plaintiff Fair Shake has and continues to suffer damages in an amount that is not presently

ascertainable, but will be established at trial, as well as irreparable harm.  Plaintiff Fair Shake is entitled to all available and applicable remedies provided for in 15 U.S.C. §§ 1117, 1118 and 1125, including, without limitation, injunctive relief, disgorgement of Defendant FairShake's profits, treble damages, costs, and reasonable attorneys' fees.

## COUNT III: COMMON LAW SERVICE MARK INFRINGEMENT

70. Plaintiff Fair Shake incorporates each and every allegation of the preceding paragraphs by reference as if fully restated herein.

71. Upon information and belief, Defendant FairShake knew of or should have known of the FAIR SHAKE marks prior to the time that it began using FAIRSHAKE, and certainly has been aware of the preceding and senior use of the FAIR SHAKE marks since at least February 27, 2020.

72. Defendant FairShake's use of FAIRSHAKE is confusingly similar to Plaintiff Fair Shake's FAIR SHAKE marks, and is in violation of Plaintiff Fair Shake's common law rights in and to its marks.

73. Defendant FairShake's unauthorized use of FAIRSHAKE in connection with the provision of its legally-related and educationally-related services is likely to deceive and cause confusion and mistake among clients, potential client, and the public as to, *inter alia,* the source or origin of the services provided or offered for sale by Defendant FairShake, and the sponsorship and/or endorsement of those services by Plaintiff Fair Shake.

74. Defendant FairShake's unauthorized use of FAIRSHAKE in connection with its legal services and educational services has caused multiple instances of actual confusion among clients, potential clients, and the general public.

75. Plaintiff Fair Shake never has authorized, licensed or otherwise condoned or consented to Defendant FairShake's use of the FAIR SHAKE marks or any confusingly similar imitations or iterations thereof.

76. Defendant FairShake has misappropriated and continues to misappropriate Plaintiff Fair Shake's substantial property rights in the FAIR SHAKE marks, as well as the goodwill associated therewith. Unless restrained and enjoined by this Court, such conduct will continue and permit Defendant FairShake to gain an unfair competitive advantage and allow Defendant FairShake to improperly interfere with Plaintiff Fair Shake's continued promotion and expansion of its business interests.

77. Upon information and belief, Defendant FairShake's ongoing acts of infringement are willful, and have been at least since February 27, 2020.

78. As a direct and proximate result of Defendant FairShake's acts of infringement, Plaintiff Fair Shake has and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial, as well as irreparable harm.

## **COUNT IV: COMMON LAW UNFAIR COMPETITION**

79. Plaintiff Fair Shake incorporates each and every allegation of the preceding paragraphs by reference as if fully restated herein.

80. Defendant FairShake has misappropriated and continues to misappropriate Plaintiff Fair Shake's substantial property rights in the FAIR SHAKE marks, as well as the goodwill associated therewith. Unless restrained and enjoined by this Court, such conduct will continue and permit Defendant FairShake to gain an unfair competitive advantage and allow Defendant FairShake to improperly interfere with Plaintiff Fair Shake's continued promotion and expansion of its business interests.

81. By participating in the conduct described above, Defendant FairShake has engaged in unfair competition with Plaintiff Fair Shake. Such conduct has caused and will continue to cause damage to Plaintiff Fair Shake's goodwill, client relationships, prospective client relationships, contractual relationships, and valuable business interests.

82. As a direct and proximate result of Defendant FairShake's acts of unfair competition, Plaintiff Fair Shake has and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial, as well as irreparable harm.

**WHEREFORE**, Plaintiff prays that this Court enter an Order:

a. Preliminarily and permanently enjoining Defendant FairShake, or anyone else acting in concert with it, or on its behalf, from: (i) using any reproduction or colorable imitation of the FAIR SHAKE marks or any mark, including FAIRSHAKE, that is confusingly similar thereto; and (ii) engaging in any other conduct that suggests or tends to suggest to the public that Defendant FairShake is in any manner, directly or indirectly, affiliated, connected or associated with Plaintiff Fair Shake, or that Defendant FairShake's services or commercial activities originate from or are sponsored or approved by Plaintiff Fair Shake;

b. Requiring Defendant FairShake to account to Plaintiff Fair Shake for all profits made by it in connection with any and all commercial activity relating to use of the infringing mark and/or awarding the statutory damages available for willful infringement of Plaintiff Fair Shake's registered marks;

c.      Awarding to Plaintiff Fair Shake the damages it sustained as a result of Defendant FairShake's wrongful acts, as well as treble damages, costs and attorneys' fees;

d.      Awarding to Plaintiff Fair Shake punitive damages as a result of Defendant FairShake's wrongful acts;

e.      Requiring transfer of any domain name, social media handle or user name that includes "fairshake" or "fair shake" to Plaintiff Fair Shake;

f.      Cancelling any registration resulting from Defendant FairShake's U.S. Trademark Application Serial No. 88/703,390 for FAIRSHAKE; and

g.      Granting Plaintiff Fair Shake any further relief that the Court deems to be just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury for all issues triable by a jury.

Respectfully submitted,

**THE WEBB LAW FIRM**

Dated: March 17, 2021       s/*Cecilia R. Dickson*
Cecilia R. Dickson (PA ID No. 89348)
Maximilian D. Meese (PA ID No. 321110)

One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815
412.471.4094 (fax)
cdickson@webblaw.com
mmeese@webblaw.com
*Attorneys for Plaintiff*